# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
Filed: June 27, 2018

```
* * * * * * * * * * * * * * * * * * * *
LAUREN BRIGGS, parent and        *        UNPUBLISHED
next friend of E.B., a minor,    *
                                 *        No. 15-737V
               Petitioner,       *
v.                               *        Special Master Gowen
                                 *
SECRETARY OF HEALTH              *        Interim Attorneys' Fees and Costs;
AND HUMAN SERVICES,              *        Attorney Rates; Excessive Billing.
                                 *
               Respondent.       *
* * * * * * * * * * * * * * * * * * * *
```

Richard Gage, Richard Gage & Associates, Cheyenne, Wyoming, for petitioner.
Voris E. Johnson, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On June 1, 2018, Lauren Briggs ("petitioner"), as parent and next friend of E.B., a minor, filed an application for interim attorneys' fees and costs. Petitioner's Interim Application ("Pet. Int. App.") (ECF No. 50). For the reasons discussed below, the undersigned **GRANTS** petitioner's application and awards a total of **$38,801.80** in interim attorneys' fees and costs.

   **I.   Procedural History**

On October 30, 2013, petitioner contacted the current counsel of record, Richard Gage, regarding filing a claim in the National Vaccine Injury Compensation Program ("Vaccine Act" or "Vaccine Program").[2] After petitioner and her counsel obtained medical records from

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this decision contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." Id. **If neither party files a motion for redaction within 14 days, the decision will be posted on the court's website without any changes.** Id.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

multiple providers, she filed the petition on July 16, 2015.  Petition (ECF No. 1).  The petition asserts that E.B. received a Menactra (meningococcal) vaccination on August 2, 2012.  Petition at 1.  Petitioner alleges that the meningococcal vaccination caused E.B. to develop aplastic anemia.  Id.  On October 14, 2015, respondent filed a Rule 4(c) report recommending against compensation.  Respondent's Report ("Resp. Rept.") (ECF No. 9).

Petitioner retained a medical toxicologist and clinical immunologist, Dr. Vera S. Byers, who presented multiple theories connecting the meningococcal vaccination to aplastic anemia.  Pet. Exhibit ("Ex") 8 at 9.  Dr. Byers concluded, to a reasonable degree of medical certainty, that the meningococcal vaccination caused E.B.'s aplastic anemia.   Id.

On October 26, 2016, respondent filed responsive reports from Dr. Penelope A. Morel, an immunologist with training in rheumatology, and Dr. John Strouse, a board certified pediatric hematologist/oncologist.  Dr. Strouse opined that there is no scientific evidence of an association between vaccinations and aplastic anemia.  Resp. Ex. C.  Dr. Morel added that none of E.B.'s physicians considered the meningococcal vaccination to contribute to her condition.  Resp. Ex. A.

On December 20, 2016, I held a status conference pursuant to Vaccine Rule 5.  I reviewed the initial expert reports and raised multiple questions that should be addressed in supplemental expert reports.  Scheduling Order (ECF No. 29).  Petitioner filed Dr. Byers's second report on May 22, 2017.  Pet. Ex. 10.  Respondent filed Dr. Morel and Dr. Strouse's respective second reports on July 12, 2017.  Resp. Exs. Y, FF.

During a status conference on August 8, 2017, I encouraged the parties to discuss the possibility of settlement.  Petitioner noted in a status report on September 22, 2017, that she made a settlement demand.  Status Report (ECF No. 41).  Respondent declined the settlement demand and "wishe[d] to continue to defend the case…."  Status Report (ECF No. 49).  Subsequently, I set an entitlement hearing for Thursday, October 17, 2019 and Friday, October 18, 2019.  Scheduling Order (ECF No. 48).

On June 1, 2018, petitioner filed the present application for interim attorneys' fees and costs.  Petitioner requests $18,765.53 in attorneys' fees and $21,587.29 in costs.  Thus, the total interim request is for $40,352.82.  See Pet. Int. App. at 4.[3]

On June 6, 2018, respondent filed a response to petitioner's motion.  Resp. Response (ECF No. 51).  Here, "respondent defers to the special master to determine whether or not petitioner has met the legal standard for interim attorneys' fees and costs award, as set forth in Avera v. Secretary of Health and Human Services, 515 F.3d 1345 (Fed. Cir. 2008)."  Id. at 2.  "Respondent respectfully recommends that the special master exercise his discretion and

---

[3] The interim fee application does not include a signed statement by petitioner confirming that she has not paid a retainer to counsel or incurred any other costs in the prosecution of this claim, in accordance with General Order Number 9.  I will not require petitioner to submit such a statement in support of the interim application.  However, petitioner should be sure to submit the General Order Number 9 statement in support of any final attorneys' fees and costs application.

determine a reasonable award for attorneys' fees and costs." Id. at 3. Petitioner did not file a reply. Thus, this matter is now ripe for review.

## II. Analysis

### A. Interim Attorneys' Fees and Costs

Section 15(e) of the Vaccine Act permits an award of reasonable attorneys' fees and costs. In addition, the Vaccine Act permits interim attorneys' fees and costs. See Avera, 515 F.3d at 1352; Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010). When a petitioner has yet to prove entitlement, the special master may grant an interim award of reasonable attorneys' fees and costs if the special master "determines that the petition was brought in good faith and there was a reasonable basis for the claim." § 15(e)(1)(B); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013). I find that this claim was brought in good faith and on a reasonable basis.

In Shaw, the Federal Circuit held that it was proper to grant an interim award when "the claimant establishes that the cost of litigation has imposed an undue hardship." 609 F.3d at 1375 (emphasis added). In Avera, the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. I do not routinely grant interim fee applications. I generally defer ruling on an interim fee application if: the case has been pending for less than 1.5 years (measured from the date of filing); the amount of fees requested is less than $30,000; and/ or the aggregate amount of expert costs is less than $15,000. If any one of these conditions exists, I generally defer ruling until these thresholds are met or until an entitlement hearing has occurred. These are, however, only informal requirements, and there ultimately are many factors bearing on the merit of an interim fee application. I evaluate each one on its own merits.

I find that an interim award is appropriate here. While petitioner does not request at least $30,000 for attorneys' fees, she does request expert costs easily in excess of $15,000. This is understandable, as the case is very complicated and presented the need for back-and-forth reports between experts to discuss their competing medical theories. Furthermore, the claim has been pending for nearly three years, which well surpasses the 1.5 year requirement. The entitlement hearing is not set to occur until October 2019; by that time, the case will have been pending for 4.5 years. If petitioner prevails, she will then proceed through the damages phase, which may also take a significant amount of time. Thus, it is appropriate to award petitioner interim attorneys' fees and costs due to the substantial expert expenses and the protracted nature of the case.

### B. Evaluation of Requested Attorneys' Fees and Costs

As stated above, the Vaccine Act only authorizes "reasonable" attorneys' fees and costs. The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S.

886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  Id. at 1348.  Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees.  See Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).

Special masters have "wide discretion in determining the reasonableness of both attorneys' fees and costs."  Hines v. Sec'y of Health & Human Servs., 22 Cl. Ct. 750, 753 (1991).  They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed.  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).  A line-by-line evaluation of the billing records is not required.  Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 483 (1991), aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993 (per curiam).

Petitioner "bea[rs] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable.  Wasson, 24 Cl. Ct. at 484.  Adequate proof of the claimed fees and costs should be presented when the motion is filed.  Id. at 484 n. 1.  Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

1. **Hourly Rates**

    a. **Richard Gage**

Mr. Gage has repeatedly requested forum rates, and several special masters have repeatedly denied his requests.[4]  Therefore, the attorneys and paralegals at Richard Gage & Associates ("the Gage firm") are entitled to the local rates in Cheyenne, Wyoming.  After a detailed review, I find that the requested rates for the Gage firm are generally reasonable, with certain adjustments detailed below.

The interim fee application provides the following hourly rates:

|  | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|
| **Richard Gage** | $294.86 | $299.64 | $300 | $311 | $318 | $326 |
| **Kristen Blume** | N/A | N/A | N/A | N/A | $251 | $251 |
| **Donald Gerstein** | N/A | N/A | $251 | N/A | N/A | N/A |
| **Kristen Reiman** | N/A | N/A | N/A | N/A | $200 | N/A |
| **Dustin Lujan** | N/A | N/A | $200 | N/A | N/A | N/A |
| **Paralegals** | $110 – 112 | $112 | $120 | $120 | $120 | $120 |

---

[4] See, e.g., Henderson v. Sec'y of Health & Human Servs., No. 14-1082V, 2017 WL 2628170 (Fed. Cl. Spec. Mstr. May 25, 2017); Auch v. Sec'y of Health & Human Servs., No. 12-673V, 2017 WL 1718783 (Fed. Cl. Spec. Mstr. April 5, 2017); Onikama v. Sec'y of Health & Human Servs., No. 15-1348V, 2017 WL 1718798 (Fed. Cl. Spec. Mstr. April 3, 2017); Wilson v. Sec'y of Health & Human Servs., No. 14-411V, 2017 WL 1374748 (Fed. Cl. Spec. Mstr. March 22, 2017); Anthony v. Sec'y of Health & Human Servs., No. 14-680V, 2017 WL 521746 (Fed. Cl. Spec. Mstr. Jan. 11, 2017).

4

Petitioner requests the following rates for work Mr. Gage performed: $300 per hour in 2015; $311 per hour in 2016; $318 per hour in 2017. I have previously found these rates to be reasonable and consistent with the local rates in Cheyenne, Wyoming. Onikama, 2017 WL 1719798; see also Hough, 2018 WL 13100860. Accordingly, the requested rates for work Mr. Gage performed between 2015 and 2017 are reasonable and should be awarded as requested. The increased rates for 2018 are reasonable and reflect the increase based on inflation. Thus, the rates for 2015-2018 are awarded in full.

Petitioner requests $294.86 per hour for work Mr. Gage performed in 2013, and $299.64 per hour for work performed in 2014. These rates are generally reasonable for an attorney with Mr. Gage's experience in Cheyenne, Wyoming. Additionally, a different special master found these rates reasonable in Auch, 2017 WL 1718783. Thus, I will award the requested amount for 2013 and 2014 in full.

### b. Dustin Lujan

Next, petitioner requests that 10.6 hours of work performed by Mr. Lujan in 2015 should be compensated at an hourly rate of $200. This is inconsistent with previous decisions. See, e.g., Onikama, 2017 WL 1719798 (awarding him $150); Hunter v. Sec'y of Health & Human Servs., No. 15-1347V, 2017 WL 5080391 (Fed. Cl. Spec. Mstr. Oct. 12, 2017) ($150); Sajbel v. Sec'y of Health & Human Servs., No. 14-741V, 2017 WL 4229079 (Fed. Cl. Spec. Mstr. Aug. 30, 2017) ($145). The Gage firm has not provided any information or reasoning for why I should diverge from these decisions and award Mr. Lujan a higher rate. Accordingly, I will compensate his work in 2015 at $150 per hour. This results in a $530.00 deduction.

### c. Kristen Reiman

Petitioner requests that 2.3 hours of work performed by Ms. Reiman in 2017 should be compensated at $200 per hour. Petitioner has not provided any documentation pertaining to Ms. Reiman's qualifications or why this rate is justified. Ms. Reiman is not listed on the firm's website and no further information was provided. Petitioners "bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. Wasson, 24 Cl. Ct. at 484. Adequate proof of the claimed fees and costs should be presented when the motion is filed. Id. at 484 n. 1. It is well-established that petitioner has the burden of establishing that her attorneys' fees are reasonable. In Hough, the Gage firm failed to provide any information about Ms. Reiman, accordingly, I awarded her the minimal attorney rate of $150 per hour. Hough, 2018 WL 13100860, at *3. I will do the same in the present case. This results in a $115.00 deduction.

### d. Other Attorneys and Paralegals

The rates requested for Mr. Gerstein, Ms. Blume, Ms. McNair, Mr. Vance, and Ms. Nelson have previously been found reasonable. See, e.g., Henderson, 2017 WL 2628170; Onikama, 2017 WL 1719798. Thus, those rates will be awarded in full.

### e. Conclusion on Hourly Rates

Mr. Lujan billed at a rate that exceeded the appropriate rates he had previously been approved for by $50 per hour. Additionally, even though the Gage firm has already been cautioned, no information regarding Ms. Reiman's qualifications has been provided. This makes it impossible to establish the appropriate hourly rate for her services. **In accordance with the above discussion, petitioner's requested fees are to be reduced by a total of $645.00 to reflect the correct hourly rates established above.**

### 2. Hours Expended

As previously noted, a line-by-line evaluation of the fee application is not required and will not be performed. See Wasson, 24 Cl. Ct. at 484. Rather, I may rely on my experience to evaluate the reasonableness of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests …. [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521. Based on a close review of the billing entries and my knowledge of the case, I find that the hours expended in the case are generally reasonable. However, there are issues with the fee application that require further discussion and modification.

### a. Excessive and Vague Entries

Special masters have found it appropriate to reduce a fee award for vagueness; block billing; and unnecessary or redundant entries. See e.g., Dempsey, 2017 WL 6343870, *6-7. "Counsel for [petitioner] should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary…." Hensley, 461 U.S. at 434. In the present case, Mr. Gage billed nearly fifty different entries for a total of 5.6 hours for "conference with paralegal." See Pet. Int. App., at 8-12. The entries average approximately six minutes each, which is likely the minimum time unit on a time keeping program. These entries could represent appropriate attorney oversight of paralegal work such as obtaining extensive medical records, affidavits, file management, and so forth. However, a more detailed explanation of the nature of these entries would enable evaluation of their appropriateness. Without some description of the conferences, it is difficult to determine if fifty entries for conferences with paralegals were justified. In Hough, I directed the Gage firm to provide more detailed information in relation to the conferences, but the Gage firm has failed to do so. 2018 WL 13100860, at *3. The Gage firm has continued to bill excessively, and failed to provide more detailed information in the hours log as I requested. As a result, the overall award will be reduced to reflect these deficiencies.

### b. Administrative Tasks

It is well-established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (denying an award of fees for time billed by a secretary and finding that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); McCulloch v. Sec'y of

6

Health & Human Servs., 2015 WL 5634323, at *26 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (denying compensation for "photocopying and similar tasks" because of their administrative nature).

The time sheets in this case are mostly reasonable, but the Gage firm billed for some administrative tasks. For example, on June 23, 2014, Ms. McNair, a paralegal, billed for "Received/Organized /Scanned /Saved medical records". See Pet. Int. App., at 24. On June 16, 2015, Ms. McNair billed for "Organized/Scanned/Saved/Exhibit & bate[s] numbered medical records". Id. at 25; see also id. at 26-29 (additional entries of this nature by Ms. McNair). These tasks are administrative in nature. As I stated in Hough, "Bates-stamping, filing, [and] printing…are considered administrative tasks for which billing in the Vaccine Program is not permitted." (Citing Rochester v. United States, 18 Cl. Ct. 379, 387).

### c. Other Billing Issues

I noted in Hough that the Gage firm's fee application was unnecessarily difficult to review. 2018 WL 13100860, at *4. Many of the issues I previously discussed in that case have not been corrected. For instance, I informed the Gage firm that one chronological list of all billing entries is preferred instead of a separate list from each individual who worked on the case. Id. at 4. The Gage firm did not correct the problem for the current case. Additionally, I observed that the application in Hough did not indicate the total number of hours expended. This issue has not been corrected either. These repeated issues contribute to a deduction in the fee award.

### d. Conclusion on Hours Expended

For the reasons discussed, I find it is appropriate to reduce the requested attorneys' fees. As noted above, in making reductions, a line-by-line evaluation is not required. Wasson, 24 Cl. Ct. at 484. Special masters may rely on their experience with the Vaccine Act and its attorneys and exercise their discretion to determine the reasonable number of hours expended. Id. The Gage firm submitted both vague and excessive billing entries. Moreover, the Gage firm has failed to correct several issues which I have previously brought to their attention. For the reasons discussed above, the Gage firm's interim attorneys' fees are reduced by 5%. **This results in a reduction of $906.03.**

### 3. Reasonable Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira, 27 Fed. Cl. 29, 34. In this case, petitioner's requested costs include filing the claim; obtaining medical records; obtaining the expert opinions; postage; and mailings. The most substantial cost comes from retaining Dr. Byers as an expert, as evidenced by the $18,400.00 invoice. Pet. Int. App., at 34-35. The itemized invoice from Dr. Byers details her rate, hours expended, and tasks. This makes the charges easy and convenient to evaluate, and the court appreciates this effort. These costs are sufficiently documented and appear reasonable.

There are, however, two different cost sheets detailing petitioner's costs.  Id.  They are nearly identical, except page 34 includes a $2,000 charge from Dr. Lawrence Steinman that page 35 does not include.  This appears to be a retainer, however, Dr. Steinman never provided a report.  No evidence of this charge has been submitted.  Additionally, page 35 requests $21,336.34 in costs, which does not include the retainer to Dr. Steinman, and is the appropriate amount required to reach petitioner's overall interim fees' and costs request of $40,352.82.  Thus, page 35 appears to be the corrected, final cost sheet.  The amount on page 35, $21,336.34, will be awarded in full.

### III.   Conclusion

In accordance with the foregoing, petitioner's application for interim attorneys' fees and costs is **GRANTED**.  I find that they are entitled to the following reasonable attorneys' fees and costs:

| | |
|---|---|
| Attorneys' Fees Requested: | $18,765.53 |
| Reduction for approved rates: | -   $645.00 |
| Reduction for other Billing Issues (5%): | -   $906.02 |
| **Attorneys' Fees Awarded:** | **$17,214.51** |
| **Attorneys' Costs Awarded:** | **$21,587.29** |
| **Total Attorneys' Fees and Costs Awarded:** | **$38,801.80** |

Accordingly, I award the following:

1) **A lump sum in the amount of $38,801.80, representing reimbursement for _interim_ attorneys' fees, in the form of a check payable jointly to petitioner and her counsel, Richard Gage of Richard Gage & Associates.**

In the absence of a motion for reconsideration or a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court is directed to enter judgment forthwith.[5]

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties separately or jointly filing notice renouncing their right to seek review.